01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
07                                   AT SEATTLE

08  MARK JOHN ELLIOTT,                    )
                                          )   CASE NO. C09-1633-JCC-MAT
09          Plaintiff,                    )
                                          )
10      v.                                )   REPORT AND RECOMMENDATION
                                          )   RE: SOCIAL SECURITY DISABILITY
11  MICHAEL J. ASTRUE, Commissioner       )   APPEAL
    of Social Security,                   )
12                                        )
            Defendant.                    )
13  _____ )

14          Plaintiff Mark John Elliott proceeds through counsel in his appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental

17  Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).

18  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of

19  record, the Court recommends that this matter be REMANDED for further proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01    **FACTS AND PROCEDURAL HISTORY**

02        Plaintiff was born on XXXX, 1958.[1]   He has a high school education and two years of

03    college. He previously worked as a stock clerk.   (AR 20, 41.)

04        Plaintiff filed an application for DIB and SSI benefits on August 26, 2008, alleging

05    disability beginning January 1, 2003, later amended to May 2, 2007. (AR 32, 101.)   He is

06    insured for DIB through March 31, 2011.   (AR 11.)   Plaintiff's application was denied at the

07    initial level and on reconsideration, and he timely requested a hearing.

08        On May 20, 2009, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff.

09    (AR 23-40.)   On July 28, 2009, the ALJ issued a decision finding plaintiff not disabled.   (AR

10    11-22.)

11        Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review

12    on October 30, 2009 (AR 1-5), making the ALJ's decision the final decision of the

13    Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.

14    **JURISDICTION**

15        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

16    **DISCUSSION**

17        The Commissioner follows a five-step sequential evaluation process for determining

18    whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

19    must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

20    not engaged in substantial gainful activity (SGA) since the alleged onset date.   Although

21    _____

22        1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  plaintiff had worked after that date, the ALJ found that the work did not rise to the level of SGA.

02  At step two, it must be determined whether a claimant suffers from a severe impairment.   The

03  ALJ found plaintiff's affective disorder and personality disorder severe.   Step three asks

04  whether a claimant's impairments meet or equal a listed impairment.   The ALJ found that

05  plaintiff's impairments did not meet or equal the criteria of a listed impairment.   If a claimant's

06  impairments do not meet or equal a listing, the Commissioner must assess residual functional

07  capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to

08  perform past relevant work.   The ALJ found plaintiff able to perform a full range of work at all

09  exertional levels with non-exertional limitations of performing simple, repetitive tasks and an

10  inability to interact closely with co-workers and the public.   With that assessment, the ALJ

11  found plaintiff unable to perform his past relevant work as a stock clerk.   If a claimant

12  demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner

13  to demonstrate at step five that the claimant retains the capacity to make an adjustment to work

14  that exists in significant levels in the national economy.   The ALJ found that the

15  Medical-Vocational Guidelines compelled a finding of "not disabled," considering the

16  plaintiff's age, education, work experience, and RFC.

17       This Court's review of the ALJ's decision is limited to whether the decision is in

18  accordance with the law and the findings supported by substantial evidence in the record as a

19  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

20  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

21  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

22  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

02  F.3d 947, 954 (9th Cir. 2002).

03          Plaintiff argues that the ALJ erroneously evaluated the opinions of examining doctors

04  Widlan and Hellekson,[2] as well as failed to completely explain the weight given to opinions of

05  the non-examining psychological consultants.   Plaintiff takes issue with the process whereby

06  the ALJ reached the RFC finding, and argues that the presence of significant non-exertional

07  impairments precluded the ALJ's reliance on the Medical-Vocational Guidelines at step five.

08  He requests remand for an award of benefits or, alternatively, for further administrative

09  proceedings.   The Commissioner argues that the ALJ's decision is supported by substantial

10  evidence, is free of legal error, and should be affirmed.

11                                        Medical Opinions

12          In general, more weight should be given to the opinion of a treating physician than to a

13  non-treating physician, and more weight to the opinion of an examining physician than to a

14  non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Where not

15  contradicted by another physician, a treating or examining physician's opinion may be rejected

16  only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

17  1396 (9th Cir. 1991)).   Where contradicted, a treating or examining physician's opinion may

18  not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

19  the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

20  1983)).

21  _____

22          2 Both parties, and the ALJ, consistently misspell Dr. Hellekson's name. (*See, e.g.,* Dkt. 17 at 1,
    Dkt. 23 at 4.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01      "The opinion of a nonexamining physician cannot by itself constitute substantial

02  evidence that justifies the rejection of the opinion of either an examining physician or a treating

03  physician."  *Id.* at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and

04  *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984)).   However, "the report of a

05  nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all*

06  *other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (quoting

07  *Magallanes*, 881 F.2d at 752 (emphasis in original)).

08      The ALJ may reject physicians' opinions "by setting out a detailed and thorough

09  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

10  making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

11  881 F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

12  interpretations and explain why they, rather than the doctors', are correct."   *Id.*   (citing

13  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

14      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

15  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

16  81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as

17  true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th

18  Cir. 1989)).   Crediting an opinion as a matter of law is appropriate when, taking that opinion as

19  true, the evidence supports a finding of disability.   *See*, *e.g.*, *Schneider v. Commissioner of

20  *Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ

21  rejected is given the effect required by the federal regulations, it becomes clear that the severity

22  of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v.*

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  *Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom

02  testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully

03  developed and disability finding clearly required).

04      However, courts retain flexibility in applying this "'crediting as true' theory." *Connett*

05  *v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where

06  there were insufficient findings as to whether plaintiff's testimony should be credited as true).

07  As stated by one district court: "In some cases, automatic reversal would bestow a benefits

08  windfall upon an undeserving, able claimant."   *Barbato v. Commissioner of Soc. Sec. Admin.*,

09  923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ

10  made a good faith error, in that some of his stated reasons for rejecting a physician's opinion

11  were legally insufficient).

12      Plaintiff assigns error to the ALJ's assessment of the opinions of examining

13  psychologist David Widlan, Ph.D., and examining psychiatrist Carla Hellekson, M.D.

14  Plaintiff argues that, given the lack of substantial evidence to support the ALJ's rejection of the

15  opinions, they must be credited as true.   Plaintiff contends that the ALJ failed to explain why

16  "significant weight" was given to some of the opinions of non-examining psychological

17  consultants, while other limitations opined by those consultants were not addressed.   (AR 19.)

18      The ALJ assessed the medical opinion evidence as follows:

19      As for the opinion evidence, the undersigned assigns significant weight to the
        opinions of the State agency psychological consultants who opined that the
20      [plaintiff] retained the ability to perform work involving 1-2 step tasks and
        multi-step tasks (*See, e.g.*, Ex. 4F [AR 212-216]) but that the [plaintiff] was
21      limited from interactions with the public.

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01    I assign partial weight to the opinion of Dr. Widlan to the extent consistent with
      the residual functioning capacity as stated above. ([AR 212-216].) Dr. Widlan
02    opined that the [plaintiff] was capable of performing simple repetitive tasks,
      which I find persuasive.   However, Dr. Widlan also opined that the [plaintiff's]
03    prognosis for maintaining employment was poor without considerable treatment
      and that he appeared to have clear deficits with adaptation in terms of ability to
04    maintain employment.   I assign this particular opinion little weight because the
      record shows that the [plaintiff] has failed to seek the typical treatment for his
05    allegedly disabling symptoms as discussed earlier, and that there is insufficient
      evidence to support Dr. Widlan's opinions regarding the [plaintiff's] ability to
06    adapt and maintain employment.

07    I assign no weight to the opinion of Carla Heliekson [sic], M.D., who opined
      that the [plaintiff] was severely limited in ability to perform routine tasks,
08    exercise judgment, make decisions, respond appropriately to and tolerate
      pressures and expectations in the normal work setting, and control physical or
09    motor movements and maintain appropriate behavior.   [AR 206-11, 393-96].
      This opinion appears to be primarily based on the [plaintiff's] subjective
10    complaints—particularly   the   [plaintiff's]   allegation   of   previously
      unsuccessfully attempting over 300 jobs, which appears to be an exaggeration as
11    mentioned earlier—rather than any supporting substantive objective medical
      evidence, which the record significantly lacks as also discussed above.   Further,
12    any social limitations were adequately addressed in the residual functioning
      capacity by restricting the [plaintiff] from regular interaction with co-workers
13    and the public.

14    (AR 19.)

15    A.    Non-Examining Psychological Consultants

16        As noted above, the ALJ assigned significant weight to the opinions "of the State

17    agency psychological consultants" as to plaintiff's ability to perform work involving

18    one-to-two step and multi-step tasks, and a limitation in plaintiff's ability to interact with the

19    public.   The consultants are not identified by name, but presumably are Alex Fisher, Ph.D. and

20    Kent Reade, Ph.D. (AR 251-70.)[3]

21    _____

22        3 The ALJ's reference to Administrative Exhibit 4F (AR 212-216) appears to be a scrivener's
      error, as this exhibit is the report of Dr. Widlan, an examining psychologist.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01      The Commissioner does not address this issue and, as plaintiff notes, the ALJ did not

02  specifically explain the basis for giving these particular opinions significant weight.   Plaintiff

03  also notes that the ALJ did not address other opinions articulated by these consultants in their

04  reports.   (AR 254 ("While the [plaintiff] would at times have challenges in completing a

05  normal work week, he would be able to successfully achieve the task the majority of the time.

06  …The [plaintiff's] low stress tolerance would result [in] some difficulty adapting to change, yet

07  he would be able to adapt to changes in the work environment."))   The omitted opinions are

08  generally corroborative of plaintiff's ability to work, although Dr. Fisher's opinion that plaintiff

09  would be able to successfully work "the majority of the time" is imprecise.   (AR 254.)

10      Although an ALJ need not discuss all evidence, he must explain why "significant

11  probative evidence has been rejected."   *Vincent v. Heckler*, 739 F.2d 1391, 1394-95 (9th Cir.

12  1984) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).) Because the ALJ assigned

13  "significant weight" to this opinion evidence, it cannot be said that the failure to provide an

14  adequate basis to review the ALJ's consideration of the evidence is harmless.   On remand, the

15  ALJ should more fully explain the reasons for accepting or rejecting the evidence from the

16  non-examining psychological consultants.

17  B.   David Widlan, Ph.D.

18      The ALJ adopted Dr. Widlan's opinion that plaintiff was capable of performing simple,

19  repetitive tasks, but did not accept the psychologist's opinion that plaintiff had a poor prognosis

20  for employment without considerable treatment, or the opinion that plaintiff had clear deficits

21  with adaptation in terms of his ability to maintain employment.   Plaintiff argues that the ALJ's

22  evaluation of Dr. Widlan is not supported by substantial evidence.   Specifically, plaintiff

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 argues that a lack of medical treatment for depression should not negate the existence of a

02 mental impairment or resulting limitations. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.

03 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise

04 of poor judgment in seeking rehabilitation.") (citing *Blankenship v. Bowen*, 874 F.2d 1116,

05 1124 (6th Cir. 1989)).   Plaintiff also disputes the ALJ's finding of insufficient evidence of

06 problems with his ability to maintain employment, citing a history of brief periods of

07 employment with at least ninety employers.

08      In response, the Commissioner notes that Dr. Widlan's opinion was contradicted by Dr.

09 Fisher's opinions that plaintiff would be able to complete a normal work week "the majority of

10 the time" and to adapt to changes in the work environment. (AR 254.)   The Commissioner

11 asserts that the ALJ properly rejected Dr. Widlan's opinion because it was based on plaintiff's

12 failure to obtain mental health treatment and his unreliable subjective allegations.

13      As stated above, however, Dr. Fisher's opinion that plaintiff could work "the majority

14 of the time" (AR 254) is vague.   Further, reviewing courts view with skepticism the drawing of

15 a negative conclusion from the failure of an individual with a mental impairment to seek

16 psychiatric treatment.   *Nguyen,* 100 F.3d at 1465.   Although the Commissioner cites evidence

17 from the record that would contradict Dr. Widlan's opinion regarding plaintiff's ability to adapt

18 and maintain employment (Dkt. 23 at 6 (citing lack of history of altercations in the workplace,

19 possible secondary gain, or inconsistency with other evidence)), neither these reasons, nor the

20 opinion of Dr. Fisher, were cited by the ALJ as a basis for the finding. The Court reviews the

21 ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc

22 rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v.*

01 *Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d

02 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants

03 understand the disposition of their cases…")).   Further, as plaintiff notes, his work history of

04 brief employment with at least ninety different employers, while short of plaintiff's estimate of

05 300 jobs (*see*, *e.g.*, AR 152), does not negate Dr. Widlan's opinion that plaintiff has "clear

06 deficits with adaptation in terms of his ability to maintain employment". (AR 215.)   In sum,

07 substantial evidence does not support the ALJ's evaluation of Dr. Widlan's opinion.

08 C.   <u>Carla Hellekson, M.D.</u>

09         Plaintiff also argues that the ALJ's reasons for giving "no weight" to the opinion of Dr.

10 Hellekson lack substantial evidence support.   Specifically, plaintiff disputes the ALJ's finding

11 that Dr. Hellekson's opinion was primarily based on his subjective complaints, noting that the

12 doctor evaluated the results of standard cognitive tests, as well as clinical signs.   In response,

13 the Commissioner argues that Dr. Hellekson's opinion is contradicted by that of Dr. Fisher (AR

14 254 ("he would be able to successfully achieve the task the majority of the time…would be able

15 to adapt to changes in the work environment.")), and, therefore, may be disregarded if largely

16 premised on the plaintiff's incredible complaints.   *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th

17 Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's

18 own accounts of his symptoms and limitations' may be disregarded where those complaints

19 have been 'properly discounted.'") (quoting *Fair v Bowen,* 885 F.2d 597, 605 (9th Cir. 1989)

20 (citing *Brawner v. Sec'y* 839 F.2d 432, 433-34 (9th Cir. 1988)).   While agreeing that Dr.

21 Hellekson did not rely exclusively on plaintiff's subjective complaints, the Commissioner

22 asserts that she did so to a significant extent.   Since the ALJ appropriately found those

01   complaints not credible, the Commissioner argues, the ALJ properly rejected Dr. Hellekson's

02   opinions.

03          Plaintiff's argument, however, is persuasive.  The ALJ downplayed the existence of

04   any objective support for Dr. Hellekson's opinion.  (AR 19 ("This opinion appears to be

05   primarily based on the [plaintiff's] subjective complaints…rather than any supporting

06   substantive objective medical evidence, which the record significantly lacks as also discussed

07   above."))  Rather, the ALJ indicated he was giving no weight to the opinion because Dr.

08   Hellekson relied "particularly" on plaintiff's report of unsuccessfully attempting over 300 jobs,

09   which the ALJ found to be an exaggeration.

10          The Court is persuaded that the ALJ did not provide legally sufficient reasons for

11   rejecting Dr. Hellekson's opinions.  Although plaintiff's tendency to exaggerate could

12   properly be considered in evaluating plaintiff's credibility in general, the fact remains that

13   plaintiff's work history includes numerous unsuccessful work attempts.  Furthermore, Dr.

14   Hellekson cited other reasons for her opinions that plaintiff had severe limitations and was

15   seriously disturbed, such as plaintiff's difficulty on the standard cognitive exam and a pattern of

16   getting a job and either failing to go to work the first day or to pick up his paycheck. (AR

17   208-09.)

18          At the same time, plaintiff fails to establish that the record supports crediting examining

19   physicians Dr. Widlan's or Dr. Hellekson's opinions as true.  That is, plaintiff does not

20   establish that, by crediting the opinions to his difficulties with or interferences in relation to

21   work functions as true, the evidence supports a finding of disability.  *See*, *e.g.*, *Schneider*, 223

22   F.3d at 976; *Smolen*, 80 F.3d at 1292.  Instead, the ALJ should be required to reconsider and

01  further explain the weight given to both Dr. Widlan's and Dr. Hellekson's opinions on remand,

02  as well as to the non-examining psychological consultants.

03                                    Residual Functional Capacity

04          At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

05  assess his work-related abilities on a function-by-function basis, including a required narrative

06  discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.  RFC

07  is the most a claimant can do considering his or her limitations or restrictions.  *See* SSR 96-8p.

08  The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that

09  are not severe, in determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

10          Plaintiff avers several errors in the ALJ's determination of his RFC.  First, plaintiff

11  argues that the ALJ's RFC determination failed to consider all of the medical opinions as

12  required by SSR 96-6p and 96-8p.  *See* SSR 96-6p *4 ("Although the administrative law judge

13  and the Appeals Council are responsible for assessing an individual's RFC at their respective

14  levels of administrative review, the administrative law judge or Appeals Council must consider

15  and evaluate any assessment of the individual's RFC by a State agency medical or

16  psychological consultant and by other program physicians or psychologists."); SSR 96-8p *7

17  ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must

18  explain why the opinion was not adopted.")  Next, Plaintiff argues that the ALJ failed to

19  support the finding that plaintiff cannot "interact closely with co-workers and the public" with

20  citations to the record. (AR 16.)  Finally, plaintiff argues that the ALJ erred by failing to

21  include an RFC limitation relating to his moderate difficulties in maintaining concentration,

22  persistence, or pace.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01     A.      Consideration of Medical Opinions

02             Plaintiff lists a number of non-examining physicians whose opinions he contends the

03     ALJ did not mention or discuss. (Dkt. 17 at 14.)   As a result of this omission, plaintiff argues,

04     the ALJ violated SSR 96-8p.   In response, the Commissioner contends that the opinions of

05     these medical personnel were either specifically discussed by the ALJ, were consistent with

06     opinions that were otherwise addressed by the ALJ, or did not opine any functional limitations.

07     Therefore, the Commissioner argues, plaintiff does not identify any functional limitation

08     addressed by these physicians that the ALJ failed to include in the RFC assessment.

09             The Court agrees that plaintiff's assignment of error falls short. Plaintiff appears to

10     contend that the ALJ's failure to mention certain non-examining physicians is *per se* reversible

11     error, failing to cite any specific opinion that he contends was overlooked.[4] *See generally*

12     *Vincent*, 739 F.2d at 1394-95 (an ALJ is not required to discuss all the evidence presented, so

13     long as he explains why "significant probative evidence has been rejected." ) (citing *Cotter*, 642

14     F.2d at 706).   Thus, plaintiff fails to demonstrate how the failure by the ALJ to address any

15     particular medical opinion would be harmful error in the assessment of his RFC.   *See generally*

16     *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing

17     application of harmless error in Social Security context where a "mistake was nonprejudicial to

18     the claimant or irrelevant to the ALJ's ultimate disability conclusion.") However, as noted

19     above, the Court agrees that the ALJ should more fully explain the consideration given to the

20

21             4 In his Reply Brief, plaintiff's argument became somewhat more specific, but not sufficient to
       cure the defect.   (Dkt. 24 at 5-6.)   *See, e.g., Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177
22     n.8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived.") (citing *Eberle v.
       Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  non-examining psychological consultants whose opinions were referenced in the ALJ's

02  decision.

03  B.      Limitation on Close Interaction with Co-Workers and the Public

04          Plaintiff asserts that, while the ALJ found he cannot "interact closely with co-workers

05  and the public," he failed to support the finding with a citation to record evidence.  Plaintiff

06  further argues that the ALJ erred in failing to define "closely interact."  The Commissioner

07  responds that the ALJ's finding was based on a reasonable interpretation of the report of Dr.

08  Fisher, who noted the lack of support for plaintiff's allegation that he involuntarily yells

09  Spanish epithets at random times, as well as the lack of corroboration for plaintiff's testimony

10  that he will physically harm his coworkers if he works.  The Commissioner cited plaintiff's

11  comments to medical providers that he feels useless unless he is working and can "always put a

12  good face on for work".  (AR 246.) The Commissioner disavows the insufficiency of the

13  ALJ's limitation on interaction with coworkers and the public, arguing that a reading of the

14  regulation does not support plaintiff's argument that any greater specificity is required.  20

15  C.F.R. §§ 404.1545(c), 416.945(c) ("When we assess your mental abilities, we first assess the

16  nature and extent of your mental limitations and restrictions and then determine your residual

17  functional capacity for work activity on a regular and continuing basis.  A limited ability to

18  carry out certain mental activities, such as limitations in understanding, remembering, and

19  carrying out instructions, and in responding appropriately to supervision, co-workers, and work

20  pressures in a work setting, may reduce your ability to do past work and other work.")

21          The Court is not convinced that the ALJ was required to provide any greater specificity

22  than the limitation set forth in the decision.  (AR 16.)  The ALJ found that plaintiff had

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01   moderate difficulties in social functioning, noting his minimal contact with family and friends

02   and Dr. Widlan's opinion that plaintiff had difficulties with social reasoning. (AR 15.)

03   However, the ALJ found plaintiff's allegations of uncontrollable anger and increasing

04   symptoms not fully credible, noting the lack of evidence of any physical altercations or any

05   reports of hostile behavior, plaintiff's denial of a history of psychiatric problems, evidence of

06   "secondary gain for housing", and a failure to report problems in functioning or anger issues to

07   examining doctors.  (AR 18.)   Further, as the Commissioner points out, the ALJ cited the

08   inconsistency between plaintiff's report to Dr. Widlan of randomly uttering Spanish epithets, as

09   compared to plaintiff's report that he was able to "always put a good face on for work".  (AR

10   19.)  Noting that "aspects of personality disorder indicating that the [plaintiff] might have

11   conflicts with his superiors does not make the [plaintiff] disabled" (AR 18 at n. 2, case citation

12   omitted), the ALJ concluded that "any social limitations were adequately addressed in the

13   residual functional capacity by restricting the [plaintiff] from regular interaction with

14   co-workers and the public." (AR 19.)   The ALJ provided legally sufficient reasons for

15   including this limitation in the RFC assessment.

16   C.     <u>Limitations in Maintaining Concentration, Persistence, or Pace</u>

17        Plaintiff argues that the ALJ found that he has moderate difficulties in maintaining

18   concentration, persistence, or pace, but failed to include this limitation in the RFC assessment.

19   Plaintiff contends that the limitation to simple, repetitive tasks is insufficient to address such a

20   limitation.   In response, the Commissioner argues that the ALJ's RFC assessment is supported

21   by substantial evidence, in that it properly relied on the opinion of Dr. Fisher that these

22   difficulties would not preclude plaintiff from performing work involving one-to-two step and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  multi-step tasks, and completing a normal work week the majority of the time.

02      The Court does not find unreasonable the ALJ's accommodation of plaintiff's moderate

03  difficulties with concentration, persistence, or pace by restricting plaintiff to simple, repetitive

04  tasks.   Moderate, and even marked, limitations in the ability to maintain attention,

05  concentration, persistence, and pace are compatible with the ability to perform unskilled jobs

06  involving simple tasks.  *See Thomas*, 278 F.3d at 958 (holding that a claimant with "a marked

07  limitation in her ability to maintain concentration over extended periods" would be capable of

08  performing unskilled jobs involving simple tasks) and *Stubbs-Danielson v. Astrue,* 539 F.3d

09  1169, 1174 (9th Cir. 2008) (ALJ's finding that claimant was restricted to "simple tasks" did not

10  constitute a rejection of physician's opinion that claimant was moderately limited in the ability

11  to maintain a consistent pace).   The ALJ noted Dr. Widlan's report that plaintiff was able to

12  exhibit "adequate" concentration and maintain focus and adequate pace while completing a

13  simple three-step task. (AR 15.)   However, the ALJ also relied on the opinion of Dr. Fisher in

14  adopting this restriction.  As noted above, this Court finds vague Dr. Fisher's opinion that

15  plaintiff could complete a normal work week "the majority of the time".   Further, this Court

16  has found that remand is required to further consider the opinions of Dr. Widlan.   On remand,

17  the ALJ should re-address the RFC finding, if implicated by the reconsideration of these

18  medical opinions.

19                              Medical-Vocational Guidelines

20      An ALJ may rely on the Medical-Vocational Guidelines ("guidelines" or "grids") to

21  meet the Commissioner's burden at step five, but "'only when the grids accurately and

22  completely describe the claimant's abilities and limitations.'" *Burkhart v. Bowen,* 856 F.2d

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01   1335, 1340 (9th Cir. 1988) (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).

02   "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly

03   limit the range of work permitted by the claimant's exertional limitations, the grids are

04   inapplicable[]" and the testimony of a VE is required.  *Id.* (quoting *Desrosiers v. Sec'y.*, 846

05   F.2d 573, 577 (9th Cir. 1988)).  *Accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)

06   ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional

07   limitations are at a sufficient level of severity such as to make the grids inapplicable to the

08   particular case.")

09        "[T]he fact that a non-exertional limitation is alleged does not automatically preclude

10   application of the grids. The ALJ should first determine if a claimant's non-exertional

11   limitations significantly limit the range of work permitted by his exertional limitations."

12   *Desrosiers*, 846 F.2d at 577 ("It is not necessary to permit a claimant to circumvent the

13   guidelines simply by alleging the existence of a non-exertional impairment, such as pain,

14   validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of

15   the guidelines.")  *Accord Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The

16   regulations . . . explicitly provide for the evaluation of claimants asserting both exertional and

17   non-exertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e)."), *modified at*

18   794 F.2d 1348 (1986).   "Non-exertional impairments may or may not significantly narrow the

19   range of work a person can do."   SSR 83-14.  For example, in *Hoopai*, 499 F.3d at 1076-77,

20   the Ninth Circuit Court of Appeals found that substantial evidence supported the ALJ's

21   conclusion that a claimant's depression, with evidence of various associated moderate

22   limitations, was not a sufficiently severe non-exertional limitation prohibiting reliance on the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01  grids without the assistance of a vocational expert (VE).   In contrast, in *Tackett v. Apfel*, 180

02  F.3d 1094, 1103-04 (9th Cir. 1999), the Ninth Circuit found that a claimant's "need to shift,

03  stand up, or walk around every 30 minutes [was] a significant non-exertional limitation not

04  contemplated by the grids[]" and, therefore, that "mechanical application of the grids was

05  inappropriate."

06      In this case, after determining plaintiff's RFC, the ALJ found plaintiff could not

07  perform his past relevant work as a stock clerk.   (AR 20.)   The ALJ proceeded with the

08  sequential analysis and, utilizing the grids as a framework, found plaintiff capable of

09  performing other work at step five.   Plaintiff argues that the presence of significant

10  nonexertional impairments required the ALJ to utilize a VE rather than using the grids as a

11  framework for his step five decision.

12      The Commissioner avers that the ALJ properly found that the grids could be used as a

13  framework for determining plaintiff was not disabled at step five.   The Commissioner

14  contends that plaintiff's non-exertional limitation to work not involving close interaction with

15  coworkers and supervisors has no more than a slight limiting effect on the occupational base of

16  unskilled work at all exertional levels.

17      As noted by the Commissioner, the presence of non-exertional limitations does not

18  automatically prohibit reliance on the grids without the assistance of a VE, so long as the ALJ

19  makes a determination that the limitations do not significantly erode the occupational base.

20  *Desrosiers*, 846 F.2d at 577.   However, in this case the ALJ's finding in that regard was

21  cursory:

22

01      The [plaintiff's] ability to perform work at all exertional levels has been
        compromised by non-exertional limitations.   However, the [plaintiff's]
02      limitation to performing simple repetitive tasks and restrictions in interacting
        with coworkers and public have only a slight effect on the occupational base of
03      unskilled work at all exertional levels under Social Security Ruling 85-15.

04   (AR 21.)

05      The ALJ did not explain the basis for this conclusion, citing cases that addressed one,

06   but not both, of the restrictions imposed in this case.  *See*, *e.g.*, *Hoopai,* 499 F.3d at 1076

07   (involving moderate limitations in the ability to maintain attention, concentration, and pace and

08   to perform within a schedule, maintain regular attendance, be punctual and complete a normal

09   workday without interruption from psychologically-based); *Zalewski v. Heckler*, 760 F.2d 160,

10   165, n. 5 (9th Cir. 1985) (involving a limitation to minimal interaction with others); *Ortiz v.*

11   *Apfel*, 55 F. Supp. 96, 101-02 (D.P.R. 1999) (involving a limitation to simple, routine, repetitive

12   tasks).  On remand, the ALJ should either explain the basis for the conclusion that the listed

13   restrictions do not significantly erode the occupational base of unskilled work, or utilize the

14   services of a VE to complete the step five analysis.

15                                  **CONCLUSION**

16      For the reasons set forth above, this matter should be remanded for further

17   administrative findings as set forth in this Report and Recommendation .

18      DATED this <u>22nd</u> day of July, 2010.

19
                                        _____
20                                       Mary Alice Theiler
                                         United States Magistrate Judge
21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19